## RAPEER v. COLPOYS, United States Marshal (RAPEER, Intervener).
### No. 6556.

United States Court of Appeals for the District of Columbia.

Decided Aug. 10, 1936.

Raymond M. Hudson and Minor Hudson, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and Allen J. Krouse and Samuel F. Beach, Asst. U. S. Attys., all of Washington, D. C., for appellee John B. Colpoys.

Jean M. Boardman, of Washington, D. C., for intervenor Frances C. Rapeer.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal by Louis Win Rapeer from an order of the Supreme Court of the District of Columbia discharging a writ of habeas corpus. The question presented is the validity of a judgment of contempt whereunder the appellant was committed to the Washington Asylum and Jail.

The material facts are undisputed: On June 24, 1924, Frances C. Rapeer, intervenor below and one of the appellees here, was granted by the Circuit Court of Arlington County, Virginia, a decree for absolute divorce from the appellant. Under its terms she was given custody of three minor children, and appellant was ordered to pay to her for their maintenance $75 per month. On March 11, 1925, the intervenor commenced an action in equity against the appellant in the Supreme Court of the District of Columbia. The bill was captioned in the intervenor's own name, but according to the assertions in the body of the bill, the suit was brought by her as guardian and next friend of her three minor children. The intervenor alleged residence in the District of Columbia on her own part and on that of the appellant. The appellant was before the court, apparently by voluntary appearance. The bill set forth that the intervenor had obtained the Virginia divorce above mentioned; it made no mention of the provision of the Virginia decree ordering payment to her of maintenance money for the children; it prayed that the Supreme Court of the District of Columbia order maintenance money paid her for the support of the children. On June 12, 1925, a pendente lite maintenance order for two of the children was

made. On August 14, 1925, the appellant filed a motion to vacate that order, asserting that because of the Virginia decree for maintenance, the Supreme Court of the District of Columbia was without jurisdiction. The record shows no ruling on this motion—apparently it was never called up for hearing. On December 8, 1926, by consent of the parties in the local equity suit, there was entered a "Final Decree for Maintenance of Children" directing the appellant to pay to the intervenor for the support of the two youngest children $75 per month. The court made several subsequent modifications of this order. The last one, entered February 4, 1932, reduced the amount of maintenance to $30 per month and was for the support of the youngest child only.

On April 16, 1935, the intervenor filed a petition alleging that the appellant was in default under the December 8th decree as modified, in the total sum of $1284. A rule was issued directing the appellant to show cause why he should not be adjudged in contempt. On April 30, 1935, the appellant moved to dismiss the petition and discharge the rule; he also answered. On June 6, 1935, he filed a motion asking the court to declare that he was not in contempt. On August 9, 1935, the court entered an order overruling the motions of April 30 and June 6, adjudging the appellant to be in arrears of maintenance in the sum of $1284, adjudging his failure to pay to have been willful and contumacious, and adjudging:

"That the United States Marshal in and for the District of Columbia be and he hereby is directed to attach the person of the defendant, Louis Win Rapeer, and to commit him to the Washington Asylum and Jail for the period of 30 days or until he shall have sooner purged himself of his said contempt by paying to the plaintiff, or to her attorney of record here, the sum of $200.00 on account of the aforesaid arrears of maintenance."

This order was carried into effect by the appellee, John B. Colpoys, United States Marshal. On August 12, 1935, petition for writ of habeas corpus was filed, and on August 19, a writ issued. On August 20, Frances C. Rapeer intervened in the habeas corpus proceeding, alleging that her interests were materially involved. On August 23, after hearing, the writ was discharged.

The appellant asserts that the writ of habeas corpus should not have been discharged for the reason that the judgment of contempt committing him to jail was void. In support of this he asserts that: 1. The bill in equity was improperly filed in the name of the intervenor rather than as guardian and next friend of the minor children. To this the appellees reply that a mother may properly file suit in her own name to compel the father to maintain minor children, and that even if the caption was irregular, the body of the bill made clear that the suit was actually brought by the mother as guardian and next friend of the children. 2. The Supreme Court of the District of Columbia was without jurisdiction in the equity suit because of the existence of the Virginia decree ordering maintenance of the children, upon which, in an action in debt, the intervenor had an adequate remedy at law. To the contrary, the position of the appellees is that the Supreme Court of the District of Columbia had jurisdiction of the parties, and, by virtue of Section 75 of Title 14 of the District of Columbia Code, 1929, 31 Stat. 1346, § 980, or by virtue of its general equity powers, jurisdiction of the subject matter; and that, while it might have been caused to decline the exercise of such jurisdiction by a proper showing of an adequate remedy at law, there was no such showing. 3. The Supreme Court of the District of Columbia lacked power to imprison the defendant since the decree directs only the payment of money. In this respect the appellant relies upon Section 102 of Title 18 of the District of Columbia Code, 1929, 31 Stat. 1208, § 113, which, after describing the manner in which the Supreme Court of the District of Columbia may enforce a decree in equity, provides: "but where the decree only directs the payment of money no defendant shall be imprisoned except in those cases especially provided for"; and the appellant asserts that the instant decree is not a case especially provided for. To the contrary, the appellees maintain that it is—that Section 75 of Title 14 of the District of Columbia Code, 1929, referred to above, providing:

"Maintenance of wife.—Whenever any husband shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, may decree that he shall pay her, periodically, such sums as would be allowed to her as permanent alimony in case of di-

vorce for the maintenance of herself and the minor children committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to such permanent alimony. [31 Stat. 1346, § 980]" covers the instant decree. It is without dispute that a decree for the payment of money rendered under section 75 may be enforced by imprisonment.[1]

It is unnecessary to discuss the first two points raised by the appellant. The third point is controlling.

■ Section 102 providing "but where the decree only directs the payment of money no defendant shall be imprisoned except in those cases especially provided for," is clearly a limitation upon the power of the court in the fundamental sense. And a decree which transcends a limitation upon a court's fundamental power is void. This proposition is so elementary that it is not worthy of extended discussion. It is true in civil cases: "Although a court may have jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void." United States v. Walker, 109 U.S. 258, 266, 3 S.Ct. 277, 27 L.Ed. 927. It is true also in criminal cases: De Benque v. United States, 66 App.D.C. 36, 85 F.(2d) 202, decided by this court May 11, 1936; In re Mills, 135 U.S. 263, 10 S.Ct. 762, 34 L.Ed. 107; In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149. It is true in contempt proceedings: Ex parte Robinson, 19

Wall. 505, 22 L.Ed. 205. There, upon adjudging an attorney guilty of contempt, a trial court had ordered him disbarred. The applicable Federal statute authorized punishment of contempt by fine or imprisonment. The United States Supreme Court, speaking through Mr. Justice Field, said: "The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment. The judgment of the court disbarring the petitioner, treated as a punishment for a contempt, was, therefore, unauthorized and void." 19 Wall. 505, at page 512, 22 L.Ed. 205.

Therefore, since the maintenance decree in the equity suit directed the payment of money, the order of commitment for contempt was void unless the decree is covered by Section 75 or some other provision. No other provision has been called to our attention as applicable, and we know of no other.

■ The appellees point out that it is the duty of a father who has been divorced, as well as of a husband, to maintain his minor children, and with this in mind, they contend that Section 75 should be construed to apply to a father after divorce, as well as to a husband before. But Section 75 is not ambiguous. By its plain terms it defines the power of a court to make a support money order against a husband for the benefit of a wife and minor children, and does not embrace the case of an order against a divorced father. It says: "When-

---

[1] This by virtue of the provision of Section 75 that "payment thereof may be enforced in the same manner as directed in regard to such permanent alimony." The directions regarding enforcement of payment of permanent alimony are in Sections 70 and 71 of the Code, providing:

"Alimony pendente lite.—During the pendency of a suit for divorce, or a suit by the husband to declare the marriage null and void, where the nullity is denied by the wife, *the court shall have power* to require the husband to pay alimony to the wife for the maintenance of herself and their minor children committed to her care, and suit money, including counsel fees, to enable her to to conduct her case, whether she be plaintiff or defendant, and *to enforce obedience to any order* in regard thereto *by attachment and imprisonment for disobedience.* The court may also enjoin any disposition of the husband's property to avoid the collection of said allowances, and may, in case of the husband's failure or refusal to pay such alimony and suit money, sequestrate his property and apply the income thereof to such objects. The court may also determine who shall have the care and custody of infant children pending the proceedings." D.C. Code 1929, Title 14, § 70, 31 Stat. 1346, § 975, as amended by 32 Stat. 537. [Italics supplied]

"Permanent alimony.—When a divorce is granted to the wife, *the court shall have authority* to decree her permanent alimony sufficient for her support and that of any minor children whom the court may assign to her care, and *to secure and enforce the payment of said alimony in the manner before mentioned,* and may, if it shall seem fit, retain to the wife her right of dower in the husband's estate." D.C.Code 1929, Title 14, § 71, 31 Stat. 1346, § 976. [Italics supplied.]

ever any *husband* shall fail or refuse to maintain his *wife* and minor children . . . the court, on application of the wife, may decree that he shall pay her . . . such sums *as would be allowed to her as permanent alimony in case of divorce* for the maintenance of herself and the minor children committed to her care by the court . . . " [Italics supplied] If the statute had been drafted to read: "Whenever any husband shall fail or refuse to maintain his wife *or any father his minor children* etc.," and if it had not contained the subsequent language descriptive of a suit by a wife against a husband and had contained language descriptive of a suit by a divorced woman against her children's father, it would have the meaning for which the appellees contend. For the court to strike out of the statute the word "and" between the word "wife" and the word "minor" and to insert the words "or any father his," and for the court to disregard the subsequent phrase "as would be allowed etc.," would be for the court to legislate.

Appellees urge Wedderburn v. Wedderburn, 46 App.D.C. 149. In that case a wife secured a maintenance decree in the Supreme Court of the District of Columbia for support of a minor child. Afterwards, the husband obtained a divorce in Virginia. Still later the wife, as next friend of the child, but nevertheless in the original District of Columbia proceeding, obtained an order increasing the amount of the maintenance and adjudging the father in contempt for failing to make payment of the original amount. We think the case distinguishable. While Section 75 was not referred to in the case, it was then a part of the District of Columbia Code and therefore warranted the decision for the reason that the original decree was prior to the divorce and was, therefore, within the terms of Section 75, in favor of a wife and against a husband. It is to be noted further that the judgment of contempt in the Wedderburn Case did not stipulate imprisonment.[2]

We bear in mind Lesh v. Lesh, 21 App. D.C. 475, to the effect that Section 75 is not a limitation upon the power of the Supreme Court of the District of Columbia but a mere legislative recognition of a power which, apart from statute, exists in a tribunal having general equitable powers. And we do not say that Section 75 operates as a limitation upon the power of the Supreme Court of the District of Columbia to issue a maintenance order against a divorced father for the support of his children. All that we rule is that Section 102 is a limitation upon the power of the Supreme Court of the District of Columbia in respect of the manner of enforcing its orders, and that it permits enforcement by imprisonment for contempt of "decrees only directing the payment of money" only in cases especially provided for, and that a maintenance order for children against a divorced father is not such a case, since it is not within the terms of Section 75 or of any provision of the local statutes.

Since the trial court had no power to commit the appellant, the writ prayed for should have been issued and the appellant discharged. Accordingly, the order discharging the writ must be, and the same is hereby,

Reversed and the cause remanded for further proceedings in accordance with this opinion.

ROBB, Associate Justice (dissenting).

I dissent on the authority of Wedderburn v. Wedderburn, 46 App.D.C. 149, which for many years has been the law in the District of Columbia and in my view should be followed now.

---

[2] The exact terms of the judgment for contempt do not appear in the report of the Wedderburn Case nor from the briefs filed therein, but the record in that case discloses that the order was phrased as follows: "and said Alexander J. Wedderburn, Jr., having wilfully failed and neglected to pay said money, as provided by the terms of the said order, he is hereby adjudged in contempt of this court, and he is directed to pay said sum of Fifty-five dollars, within thirty days, in which event he may purge himself of such contempt; *otherwise, the Marshal is hereby directed to bring said defendant before the Bar of the Court to be dealt with as the Court shall order and decree.*" [Italics supplied] There was, therefore, no formal order of imprisonment in the Wedderburn Case. We cannot presume that the court would have ordered imprisonment. Under its general equity powers it had authority to impose a fine. 36 Stat. 1163, § 268 (28 U.S.C.A. § 385).